IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GARY NEWELL, II,<br>　　Plaintiffs, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 2-09-cv-00058 (TJW) |
| | § | |
| MORAN TOWING CORPORATION,<br>　　Defendant. | §<br>§<br>§ | |

## **MEMORANDUM OPINION AND ORDER**

Defendant Moran Towing Corporation ("MTC") moves to dismiss all of plaintiff Gary Newell, II's claims under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The Court concludes that it has personal jurisdiction over MTC and therefore DENIES the motion for the reasons discussed below.

**I.　Background**

MTC is a New York corporation with its principal place of business in New Canaan, Connecticut. In 1981, MTC caused to be incorporated in Texas a subsidiary called Moran Maritime Services, Incorporated. In 1983, MTC and its subsidiary merged, with MTC acquiring all of Moran Maritime Services, Inc.'s assets, debts, and ownership of property in Texas. Sometime thereafter, MTC created another wholly-owned subsidiary, Moran Towing of Texas, Incorporated ("M-Tex").

Mr. Newell was hired by M-Tex in 1994, but has since then been an employee of MTC, with his paycheck coming from MTC in Connecticut. In 2007, as an employee of MTC, Mr. Newell was a captain assigned to a barge called the New Hampshire, which was owned and operated by MTC. Mr. Newell filed this suit against MTC, alleging that he sustained injuries during an accident aboard the New Hampshire on March 1, 2007. Mr. Newell filed the suit under the Jones

Act, 46 U.S.C.A. § 30104 (2008), accusing MTC of negligence and of breaching its absolute duty to maintain a seaworthy vessel.

## II. Discussion

### A. Legal Standard

Before it may exercise personal jurisdiction over a nonresident defendant, a federal district court must "determine whether both the forum state's long-arm statute and federal due process permit the court to exercise personal jurisdiction." *Johnson v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993)). Texas' long-arm statute extends to the limits of due process. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000). Therefore, a Texas district court must only perform the federal due process analysis. *Johnson*, 523 F.3d at 609 (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). Due process permits a federal court to exercise personal jurisdiction over a nonresident defendant only if a plaintiff proves: (1) that the nonresident defendant has "purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state;" and (2) that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* (quotations and citations omitted).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir.2001). Specific jurisdiction exists when the defendant's contacts "arise from, or are directly related to, the cause of action." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994). General personal jurisdiction, on the other hand, "will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts with the forum state are both 'continuous and systematic.' *Id.* (quoting *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

"When a court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, as in this present case, . . . the nonmoving party need only make a prima facie showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor." *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999). After the plaintiff makes this prima facie showing, then "jurisdiction exists unless defendant can make a 'compelling case' that traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction." *Johnston*, 523 F.3d at 615 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). A court assessing the reasonableness of jurisdiction will generally consider: "(1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the shared interest of the several states." *Id.*

### B. Analysis

Mr. Newell does not contend that specific jurisdiction exists over MTC. The Court's focus is, therefore, on general personal jurisdiction. MTC disputes that its contacts with Texas are systematic and continuous. MTC argues that this Court does not have personal jurisdiction over it because it "does not maintain a place of business in the State of Texas, has no employees, servants or agents in the State of Texas, and does not own or rent any real or personal property in the State of Texas." [Dkt. No. 5, p. 2] MTC further argues that it "directs no type of advertising to the State of Texas[,]" "has no officers or directors located in the State of Texas[,]" "has never consented to jurisdiction," and "does not pay any sort of property taxes and/or school taxes" in Texas. [Dkt. No. 5, p. 3]

Mr. Newell, on the other hand, disputes a number of MTC's assertions. Mr. Newell argues

that MTC is subject to personal jurisdiction because of its activities in Port Arthur, Texas. Specifically, MTC owns five tugboats based out of Port Arthur, promotes through its website a "vast fleet of tugs and barges available throughout the United States including Texas," has a corporate officer in Texas, employs eight Texas citizens, delivers operational manuals to Texas employees that work for either MTC or M-Tex, maintains a presence in Texas at the offices of its subsidiary M-Tex, and touts in the company's *Towline* newsletter its towing capabilities in Texas gulf ports. [Dkt. No. 6, p. 5–11] Construing the disputes in favor of Mr. Newell, the Court finds that he has made a prima facie showing that MTC has systematic and continuous contacts with Texas.

MTC argues that the contacts in Port Arthur belong to M-Tex, not MTC. Even if that were true, it is consistent with due process "to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is the alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). To establish under Texas law that a parent is the alter ego of a subsidiary, there must be "such unity between corporation and [parent] that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *SEC v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 302 (5th Cir. 2007) (internal quotations omitted). Factors that courts consider when determining whether there is an alter ego are "the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for [the parent's] purposes." *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986).

Many of the same facts that demonstrate that MTC has purposefully availed itself of the benefits and protections of Texas also support the conclusion that M-Tex is the alter ego of MTC for jurisdictional purposes. Consistent with Mr. Newell's allegations, MTC uses M-Tex to benefit its own purposes, exhibiting a high degree of domination and control over M-Tex. Mr. Newell presented evidence that, in the *Towline* newsletter, MTC refers to M-Tex's presence in Port Arthur as "Moran's Texas operation;" MTC explains how, during Hurricane Rita, "the company's temporarily abandoned base in Port Arthur was being devastated by high winds;" MTC advertises that its "base at the geographic center of the tri-port area [of Port Arthur, Beaumont and Orange, Texas]" maintains "five vessels that are available for complete ship-assist services within the region." [Dkt. No. 6-8] Mr. Newell also pointed the Court to MTC's website, where MTC identifies M-Tex as a "Regional Office" or a "Division." *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 857 (5th Cir. 2000) (refusing to find an alter ego where the subsidiary was not a division). Additionally, MTC's website provides evidence of its plans to increase its business in Texas with a newly acquired tugboat called the Lynn Moran, which belongs to MTC and operates out of Port Arthur. [Dkt. No. 16-6] MTC's Vice President explains the benefits to Port Arthur that MTC's Lynn Moran provides: "This tug has just the type of equipment that is needed for a growing port like this. We've got tankers as large as 900 feet coming in here and soon we'll have LNG tankers." [Dkt. No. 16-6] Furthermore, it is undisputed that Mr. Newell has used M-Tex's offices in Port Arthur to conduct hiring for MTC, fax and copy documents for MTC, and handle shipping for MTC. [Dkt. No. 11-3] MTC and M-Tex have common officers, and MTC conducts staffing for M-Tex. *Id.* MTC maintains control of M-Tex's operations in Port Arthur through the MTC Operating Policy & Procedures Manual, which it provides to all of its divisions, including M-Tex. [Dkt. No. 6-4] Furthermore, M-Tex Vice President Stephen Kelly reports to

the MTC President, Edward Tregurtha. [Dkt. 10-3] There is no indication that M-Tex has a corporate president of its own. These facts support the closely related conclusions that M-Tex is MTC's alter ego, and that MTC has purposefully availed itself of the busy shipping lanes that Texas' gulf ports provide. This Court's personal jurisdiction over MTC is therefore compatible with Due Process.

MTC now has the burden to make a compelling case that "traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction." *Johnston*, 523 F.3d at 615. MTC offers little to support its conclusion that "[i]t would constitute an unfair burden to force MTC to litigate this dispute in Texas . . . ." [Dkt. No. 10, p. 9] MTC does not address any of the factors that this Court should consider, namely, that litigating a case in Texas would impose an unreasonable burden on MTC, that Texas does not have a strong interest in litigating this dispute, that Mr. Newell has an interest in obtaining convenient and effective relief, or the shared interest of several states. *See Johnston*, 523 F.3d at 615. The Court is of the opinion that MTC has not met its burden.

### III. CONCLUSION

For the reasons state, the Court DENIES MTC's motion to dismiss for lack of personal jurisdiction.

It is SO ORDERED.

SIGNED this 28th day of September, 2009.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE